IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROXANNE P. RUSSELL            07-6234-MA

       Plaintiff,         OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

       Defendant.

KATHRYN TASSINARI
MARK MANNING
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, OR 97401
(541)686-1969

       Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1158

1  - OPINION AND ORDER

STEPHANIE R. MARTZ
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2272

    Attorneys for Defendant

MARSH, Judge.

    Plaintiff Roxanne Russell seeks judicial review of the final decision of the Commissioner denying her December 15, 2004, application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f.

    Plaintiff was 51 years old on the date of the Commissioner's final decision.  She alleges she has been disabled since July 15, 2002, because of fibromyalgia, arthritis, and depression.  Plaintiff's disability claim was denied initially and on reconsideration.  The Administrative Law Judge (ALJ) held a hearing on March 12, 2007, and issued a decision on April 25, 2007, that plaintiff was not disabled.  On July 10, 2007, the Appeals Council denied plaintiff's request for further review.  The ALJ's April 25, 2007, decision, therefore, became the final decision of the Commissioner for purposes of judicial review.

    Plaintiff seeks an Order from this court reversing the Commissioner's decision and remanding the case for an award of benefits.  For the following reasons, the court **AFFIRMS** the final decision of the Commissioner and **DISMISSES** this case.

## THE ALJ'S FINDINGS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled. <u>Bowen v. Yuckert</u>, 482 U.S.137, 140 (1987). <u>See also</u> 20 C.F.R. § 404.1520. Plaintiff bears the burden of proof at Steps One through Four. <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

At Step One, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability.

At Step Two, the ALJ found plaintiff suffers from fibromyalgia and degenerative disc disease of the lumbar spine, which are severe impairments under 20 C.F.R. §§404.1520(c)(an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities).

At Step Three, the ALJ found these impairments do not meet or equal a listed impairment. The ALJ found plaintiff has the residual functional capacity to lift and carry 10 lbs frequently and 20 lbs occasionally, to sit, stand, and/or walk for six hours in an eight hour work day, to push and pull on an unlimited basis, and occasionally to stoop, kneel, crouch, crawl, and balance. She should not climb on ropes, ladders, or scaffolds.

3 - OPINION AND ORDER

At Step Four, the ALJ found plaintiff is unable to perform her past relevant medium exertion work as a caregiver.

At Step Five, the ALJ found plaintiff is able to perform a full range of light exertion work, including cashier, office helper, and rental storage clerk.

Consistent with the above findings, the ALJ found plaintiff was not under a disability and denied her claim for benefits.

## ISSUES ON REVIEW

Plaintiff seeks an Order reversing of the Commissioner's final decision and remanding the case for an immediate award of benefits because the ALJ failed (1) to give clear and convincing reasons for rejecting plaintiff's testimony, (2) to give clear and convincing reasons for rejecting the opinion of treating physician William P. Maier, M.D., (3) to assess any limitation based on plaintiff's depression, and (4) to prove plaintiff can perform other work in the national economy.

## LEGAL STANDARDS

The initial burden of proof rests on the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). To meet this burden, the claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . .

has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). The duty to further develop the record, however is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the

court.  Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000).  "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded."  Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

## RELEVANT RECORD

**Plaintiff's Evidence.**

Plaintiff is a high school graduate.  Her prior jobs include work as a caregiver, paint trimmer, and cashier.  She was terminated from her last job as a cashier in November 2001.

Plaintiff is married but separated from her husband, who is mentally disabled and lives about six or seven miles away.  She lives by herself in a trailer owned by her nephew and located on her mother's property.

Plaintiff cooks for herself, usually using a microwave, and she does laundry once a month.  She is unable to clean house.  Plaintiff's only source of income is derived from food stamps.  Her mother helps her with grocery shopping, which is a time-consuming process because her mother also has physical infirmities.  Until two months before the hearing her 16 year-old son lived with her and he helped around the home.

Plaintiff cannot do the household chores because she is in constant pain, mostly in her joints - wrists, elbows, shoulders, neck, knees, ankles, and hips, and she experiences severe

6 - OPINION AND ORDER

headaches.  She also has sciatic nerve problems in her buttocks.  She has difficulty sitting for more than a few minutes.  She wakes up three or four times at night because of the pain.  She is unable to lift items as heavy as a grocery bag.  She does no physical exercise because it is too painful, despite having been advised by her doctor that it would be good for her.

Plaintiff suffers from depression but although medication has been recommended, she has not gone to the doctor's office to "do that yet."

Plaintiff used to go fishing and camping and was in a bowling league.  Plaintiff now spends most of her days watching T.V., doing crosswords, and crocheting, although that hurts her wrists, hands, and fingers.  After five to ten minutes, she needs to take a break.  She lays down for 15 or 20 minutes twice a day or so when she gets tired.

Before 2000, Plaintiff used to drink a six pack of beer four or five times a week but now only a drinks a 12 oz beer less than once a month.  Plaintiff does no physical exercise.

**Relevant Medical Records.**

    **Treating Physicians**.

Plaintiff's records from treating physicians are sparse.

<u>Sacred Heart Medical Center</u>.

In March 2003, plaintiff was delivered to the emergency room

by paramedics after she complained of a severe frontal headache. She stated she drank two glasses of wine. Her blood alcohol level was .20. An MRI of her brain did not reveal a significant abnormality. She was diagnosed with an acute headache and alcohol intoxication and was discharged after her headache resolved.

    <u>Marlon G. Fletchall, M.D. - Family Practice/General Surgery</u>.

Dr. Fletchall cared for plaintiff for complaints relating to apparent osteoarthritis in her left knee, bursitis in her hip, and chronic back pain. She was treated primarily with Vicodin and until December 2002, was on a pain contract for 60 Vicodin a month. At that time, plaintiff complained of continuing problems with her left knee and was placed on a new pain contract which allowed her to receive 90 Vicodin a month.

In February 2003, plaintiff complained of pain down the left side of her back and shoulders after she did some painting. The examination revealed subjective pain in the left sciatic nerve and left hip with some limitation of motion. Plaintiff's shoulders "seem[ed] to be moving pretty well." She was prescribed Flexeril as a muscle relaxant for 10 nights in addition to the Vicodin.

In March 2003, Dr. Fletchall assessed plaintiff as suffering from "obvious degenerative arthritis of the left knee" with

probable degenerative disc disease of the left sciatica and limited range of motion in her back. An X-ray of her back showed mild degenerative changes "but nothing too remarkable."

A week later, plaintiff was treated for a sinus infection and complained of a headache, which Dr. Fletchall assessed as "probably migrainous in nature." Dr. Fletchall referred plaintiff for a neurological examination with neurologist, David Lippincott, M.D. Dr. Lippincott diagnosed moderate to severe suprascapular and paracervical muscle tension, and several areas of trigger point tenderness causing radiating pain in the head and neck. Dr. Lippincott discounted a diagnosis of migraine headaches and posited that plaintiff's daily use of Excedrin and Imitrex medication might be causing the headaches.

In October 2003, plaintiff saw Dr. Fletchall complaining of right knee discomfort. An x-ray showed no abnormality. The knee was stable and plaintiff had full range of motion. Dr. Fletchall increased the daily Vicodin dose to 50mg.

In February 2004, plaintiff complained of a headache. On examination, she was in no acute distress and in general good health. She described a pain level of 7 out of 10 and Dr. Fletchall diagnosed "chronic migraine." A week later, plaintiff again complained of a headache. Dr. Fletchall gave her an additional six Vicodin "to cover her because she had to use a few

more than is her want because of the headache discomfort." He also prescribed Indocin (anti-inflammatory pain medication).

In August 2004, plaintiff complained of abdominal pain, back pain, and left leg pain. She told Dr. Fletchall she was unable to work and Dr. Fletchall agreed "at least from the subjective standpoint of her symptoms." Dr. Fletchall agreed that her symptoms were suggestive of fibromyalgia, but he also thought there was a "psychological component." An MRI of plaintiff's lumbar spine revealed a mild-to-moderate facet joint arthrosis at L4-5, a small annular bulge with no disc protrusion at L3-4, and no deformity of the L3 nerve root. Dr. Fletchall also believed plaintiff had "a very significant component of depression." He intended to present to plaintiff the concept of treating her depression with medication, which might "help indirectly" in "other areas of her life, including work." Dr. Fletchall's treatment records end on that note.

In January 2005, at the request of Oregon DDS, Dr. Fletchall stated that plaintiff suffers from "chronic pain like syndrome, which includes fibromyalgia, dating back to 2003, severe headache syndrome which appears to have a migrainous and musculoskeletal component, and chronic low back pain with left sciatica." He also opined plaintiff "carries the diagnosis of osteoarthritis, left knee, and left trochanteric bursitis, which is a factor

10 - OPINION AND ORDER

in this."  Dr. Fletchall opined that plaintiff's "employability is questionable due to her chronic pain.  I do not feel qualified to say more than that."

<u>William P. Maier, M.D. - Rheumatologist</u>.

Plaintiff apparently was examined by Dr. Maier in October 2002 for chronic left knee pain and episodic neck and low back pain but details of that examination are not in the record.  In April 2003, plaintiff saw Dr. Maier again with the same complaints.  Dr. Maier noted she had full range of motion of all joints, with a normal x-ray of the left knee and mild degenerative changes in the lumbar spine.  Dr. Maier discounted a diagnosis of osteoarthritis in favor of fibromyalgia.

Six months later, in November 2003, Dr. Maier examined plaintiff for right knee pain of unclear etiology.  Plaintiff had full range of motion and good stability in the knee, although she exhibited pain on palpation.  Dr. Maier gave her samples of Vicodin to take once or twice a day and expected to reassess her condition in 30 days.

Plaintiff returned nine months later in August 2004 "to discuss disability issues."  On examination, she was in no acute distress" but "appear[ed] to be in a lot of pain."  She had full range of motion of her wrists, elbows, shoulders and cervical spine.  She expressed pain on palpation of the mid-lumbar spine.

11 - OPINION AND ORDER

she had good range of motion of her hips and knees. She had "widespread trigger points on exam" but "no focal neurological findings." Dr. Maier diagnosed osteoarthritis and fibromyalgia and opined plaintiff was "permanently disabled by her degree of pain." She asked questions about stronger pain medicines.

<u>Richard A. Barnhart, M.D. - Internal Medicine</u>.

In September 2004, plaintiff switched her treatment to Dr. Barnhart. Plaintiff gave a history of chronic pain, osteoarthritis, degenerative disc disease, and fibromyalgia. After examining her, Dr. Barnhart concluded her complaints were consistent with fibromyalgia. Thereafter, Dr. Barnhart diagnosed chronic pain with a large psychological component, osteoarthritis in the knee, and fibromyalgia.

In November 2004, Dr. Barnhart asked Dr. Maier whether opiates would be appropriate pain medication in plaintiff's case. Dr. Maier agreed they would be and in December 2004, Dr. Barnhart began prescribing methadone to give "pain relief adequate for [plaintiff] to be active."

In January 2005, Plaintiff complained that the amount of methadone she was prescribed was inadequate, and the dose was increased from 10 mg to 40 mg. Thereafter, plaintiff saw Dr. Barnhart approximately once every three months for neck and back pain and other issues such as seasonal allergies. One of

the visits was prompted by Dr. Barnhart's request to see her following a report by her mother that plaintiff was misusing medications. The only other contacts were by telephone, when plaintiff requested refills of her methadone prescription.

KOD Chiloquin Family Practice.

In September 2006, plaintiff changed her medical provider. She sought and was provided refills of methadone to treat her fibromyalgia, even though the narcotics contract she entered into with Dr. Barnhart expressly provided that methadone was to be prescribed only for her degenerative disc disease.

**Examining Physicians/Psychologists.**

Peter Verhey, M.D.

In March 2005, Dr. Verhey examined plaintiff on behalf of the Commissioner regarding her complaints of fibromyalgia, bilateral knee pain, and back pain. Plaintiff was consistent during the examination but appeared to exaggerate at times during the examination. Dr. Verhey agreed with plaintiff's diagnoses but opined that the x-rays and imaging films did not confirm the degree of pain plaintiff alleged. He opined she could lift and carry 50 lbs frequently and sit/stand for six hours in an eight hour day.

Allison Prescott, Ph.D. - Psychologist.

In April 2005, Dr. Prescott performed a psychodiagnostic examination on behalf of Disability Determination Services. She

13 - OPINION AND ORDER

noted plaintiff's speech was rambling but otherwise normal, and she had normal affect, good concentration, good short term memory, and appeared to be of average intellectual functioning.

Dr. Prescott diagnosed dysthymia but also noted plaintiff's self report that she is now less depressed than she used to be.

Center for Family Development.

In November 2003, two licensed therapists examined plaintiff after she complained of symptoms of depression. During the course of the examination, plaintiff stated she used to abuse alcohol but had not done so for well over a year. She did not mention her March 2003 emergency hospitalization during which she had a .20 blood alcohol level. Based on plaintiff's self-reports, the therapist diagnosed depression with a GAF score of 46 (serious impairment of social, occupational, or social functioning).

**Consulting Physicians/Psychologists.**

Mary Ann Westfall, M.D.

Dr. Westfall reviewed plaintiff's medical records and concluded she could perform a light range of work, with some postural limitations such that plaintiff could frequently lift 10 lbs and occasionally lift 20 lbs, sit, stand, and walk six hours in an eight hour day, push and pull on an unlimited basis, and occasionally climb, stoop, kneel, crouch, and crawl. She should not balance.

14 - OPINION AND ORDER

**ANALYSIS**

**Rejection of Plaintiff's Testimony**.

Plaintiff contends the ALJ failed to give clear and convincing reasons for finding her not credible.

A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'" Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A) (1988)).  See also Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986).  A claimant need not produce objective medical evidence of the symptoms or their severity.  Smolen v. Chater, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If a claimant produces objective evidence that underlying impairments could cause the pain she complains of and there is no affirmative evidence to suggest the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of her symptoms.  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). See also Smolen, 80 F.3d at 1283.  To determine whether plaintiff's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that

15 - OPINION AND ORDER

appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Id. at 1284 (citations omitted).

Here, the Commissioner asserts the ALJ appropriately evaluated plaintiff's credibility and found it lacking in light of (1) plaintiff's drug seeking behavior, (2) the lack of objective evidence from X-Rays and MRIs to support the severity of plaintiff's impairments or to justify her extensive use of methadone and Vicodin, and (3) her lack of candor regarding her use of alcohol. I agree.

First, the record as a whole supports the ALJ's conclusion that plaintiff saw her doctors just often enough to keep her medications flowing, and sometimes switched doctors for that purpose. Second, the opiate medication was prescribed for alleged degenerative disease processes in the back and knees that are not as severe as suggested by plaintiff's pain complaints. Finally, the record is clear that plaintiff was not candid regarding her use of alcohol.

On this record, I conclude the ALJ did not err in rejecting plaintiff's testimony regarding the severity of her impairments.

**Rejection of Dr. Maier's Medical Opinion**.

Plaintiff contends the ALJ failed to give clear and

convincing reasons for rejecting Dr. Maier's opinion that plaintiff was disabled. I disagree.

In Reddick v. Chater, 157 F.3d 715, 7125 (9th Cir. 1998), the Ninth Circuit laid out the weight to be given to the opinions of treating doctors:

> The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons supported by substantial evidence in the record. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

(Internal Citations Omitted). In turn, "the opinions of examining physicians are afforded more weight than those of non-examining physicians." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).

The ALJ pointed out that plaintiff saw Dr. Maier at increasingly infrequent intervals and he relied on her subjective complaints rather than on any objective findings in assessing the degree of her impairments. For instance, in his April 2003,

examination, Dr. Maier noted plaintiff had full range of motion of all joints in April 2003 with a normal x-ray of the left knee and only mild degenerative changes in the lumbar spine. When she returned six months later complaining of right knee pain she exhibited full range of motion and good stability in the knee.

It is also noteworthy that Dr. Maier gave plaintiff samples of Vicodin to take once or twice a day and expected her to return for a reassessment of her condition in 30 days. Plaintiff returned, however, only nine months later in August 2004 for the sole purpose of asking Dr. Maier to support her disability claim. Although plaintiff seemed to be in pain, she had full range of motion of her wrists, elbows, shoulders, cervical spine, hips and knees. In addition, although she exhibited "widespread trigger points on exam," she had "no focal neurological findings." Based almost entirely on her subjective complaints, Dr. Maier diagnosed osteoarthritis and fibromyalgia and opined plaintiff was permanently disabled by her degree of pain." I find the the ALJ gave clear and convincing reasons for not crediting Dr. Maier's disability opinion.

**Failure to Assess Limitations based on Depression.**

Plaintiff asserts the ALJ failed to take her depression diagnosis into account in assessing her ability to work. I disagree. The ALJ found plaintiff's dysthymia was not severe.

There is substantial evidence in the record to support that finding.  First, plaintiff never sought treatment for the condition.  Although Dr. Fletchall recommended medication, plaintiff never got around to following up, despite a demonstrated inclination to follow up repeatedly regarding pain medication prescriptions.  It is noteworthy that when plaintiff established care with Dr. Barnhart one month later because of her dissatisfaction with Dr. Fletchall's pain medication regimen, she did not mention Dr. Fletchall's recommendation regarding medication to treat depression and the records do not show she ever raised the subject with Dr. Barnhart during the two years he treated her.

On this record, I conclude the ALJ did not err in finding plaintiff's dysthymia to be non-severe and, therefore not sufficient to justify a workplace limitation.

**Failure to Prove Plaintiff Can Perform Other Work.**

Plaintiff contends that, if her testimony and/or Dr. Maier's medical opinion are credited, she must be found to be disabled.  The ALJ, however, gave clear and convincing reasons not to credit plaintiff's testimony.  In addition, the ALJ's failure to impose workplace limitations based on Dr. Maier's opinion was not error because the ALJ also gave clear and convincing reasons for not accepting Dr. Maier's opinion.

19 - OPINION AND ORDER

## CONCLUSION

For all the reasons stated above, the court **AFFIRMS** the final decision of the Commissioner and **DISMISSES** this case.

IT IS SO ORDERED.

DATED this 27 day of August, 2008.

                                          /s/   Malcolm F. Marsh
                                            MALCOLM F. MARSH
                                    United States District Judge